SOUTH PLAINS LAMESA RAILROAD, LTD. and Kitten Family Living Trust, Appellants,

v.

HIGH PLAINS UNDERGROUND WATER CONSERVATION DISTRICT NO. 1, Appellee.

No. 07–00–0089–CV.

Court of Appeals of Texas, Amarillo.

April 17, 2001.

---

William R. Power, Arlington, Leonard J. Kolanowski III, Keller, for appellant.

McWhorter Cobb & Johnson LLP (Gary R. McLaren), Lubbock, for appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

*ON MOTION FOR REHEARING*

REAVIS, Justice.

On original submission, we reversed and rendered in part and severed and remanded in part for further proceedings. High Plains Underground Water District No. 1 (District) has now filed a motion for rehearing. We overrule the motion, but withdraw our original opinion of January 25, 2001 and, in lieu thereof, issue the following opinion. Our judgment of January 25, 2001 is unaffected.

By this appeal, South Plains Lamesa Railroad, Ltd. (South Plains) and the Kitten Family Living Trust (Kitten Trust) challenge a summary judgment denying their request for declaratory relief and awarding attorney's fees to the District. By their four issues, they ask 1) whether the trial court erred in granting the motion for summary judgment of the District, 2) whether the District could reopen and revoke a water well application four months after granting the permit absent a finding of changed circumstances, 3) whether the District could apply an *ad hoc* standard not part of its rules to deny a water well permit even though the application had satisfied all of the District's rules, and 4) whether the District can nullify the rule of capture. In this appeal, we must determine the validity of the action of the District revoking one water well permit and denying another permit on the ground that it was proper to avoid the pumping of a disproportionate amount of water as it relates to the tract size and the District's well spacing regulations. Because none of the eleven cases cited by the District involve groundwater districts or their rule making authority, we conclude that the question presented is a case of first impression. Based upon the rationale and authorities expressed herein, we reverse and render in part; and sever and remand in part for further proceedings.

■ Section 59(a) of Article XVI of the Texas Constitution provides that the Legislature shall pass all laws as may be appropriate to water conservation and development and section 59(b) authorizes the creation of districts to have the authority as may be conferred by the law, which

subsection (a) directs the Legislature to enact. By section 36.0015 of the Water Code,[1] the Legislature has declared that regional groundwater districts are the State's preferred method of groundwater management and under section 36.001(15), a district is a political subdivision exercising State powers and such districts stand upon the same footing as a county. Lewis Cox & Son v. High Plains Underground Water, 538 S.W.2d 659, 663 (Tex.Civ. App.—Amarillo 1976, writ ref'd n.r.e.).

On December 9, 1997, the District approved water well application permit no. 8149-A that allowed the Kitten Trust to drill, equip, and produce a water well on its easement covering a small tract owned by South Plains. After the Kitten Trust drilled and equipped a well and constructed a pipeline at a cost of approximately $30,000, on April 13, 1998, adjoining landowners filed a protest to the Kitten Trust application for water well permit no. 8149-A. Following a hearing on May 12, 1998, the Board of the District passed a motion to disallow water well permit no. 8149-A, which provided that the Board found:

1. That the legal description supplied by Plaintiff Kitten Trust in Water Well Application 8149-A was not of sufficient detail to apprise Defendant of the size of the tract on which the well was to be drilled.

2. That if the size of the tract had been known, it is unlikely that the Lubbock County Committee would have recommended its approval.

3. That Water Well Permit 8149-A would have allowed a disproportionate amount of water to be pumped as it relates to the tract size and Defendant District's well spacing regulations as

they relate to gallons per minute per acre as set by the District's spacing rules.

Then, on May 13, 1998, South Plains filed its water well application permit no. 8209 that remedied alleged procedural deficiencies in the Kitten Trust application. On July 13, 1998, the same adjacent landowners filed a protest to water well application no. 8209. At a hearing on July 14, 1998, the District Board denied application permit no. 8209 even though the District Board Manager reported to the Board that the application complied with the District's spacing requirements.[2] In response to request for admissions, the District admitted that the District's Board of Directors on July 14, 1998, voted to deny South Plains's application permit no. 8209 "to prevent disproportionate taking of water."

By their trial pleadings, South Plains and the Kitten Trust contended that the action of the District in revoking application permit no. 8149-A and denying application permit no. 8209 was in error as a matter of law, and they also sought attorney's fees in accordance with the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem.Code Ann. §§ 37.001–37.011 (Vernon 1997), specifically section 37.009. The answer of the District included a general denial and a request for an award of attorney's fees pursuant to section 37.009. After traditional motions for summary judgment were filed by all parties, the trial court granted the motion for summary judgment of the District and awarded attorney's fees to the District. Before we commence our analysis of the issues, we first set out the appropriate standard of review.

---

1. Unless otherwise designated all references are to the Texas Water Code Annotated (Vernon 2000).

2. Uncontroverted by the District.

## Summary Judgment Standard of Review

■■■■ For a party to prevail on a traditional motion for summary judgment under Tex.R. Civ. P. 166a(c), he must conclusively establish the absence of any genuine question of material fact and that he is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c). This requirement dictates that when the defendant is the movant, he must conclusively negate at least one of the essential elements of the plaintiff's cause of action. Likewise, a defendant who conclusively establishes each element of an affirmative defense is entitled to summary judgment. Randall's Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex.1995). In Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548–49 (Tex.1985), the Court set out the standard by which we are to review a summary judgment:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

Once the movant has established a right to summary judgment, the non-movant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 678 (Tex.1979); Barbouti v. Hearst Corp., 927 S.W.2d 37, 64 (Tex.App.—Hous-

ton [1st Dist.] 1996, writ denied). Issues which the non-movant contends preclude the granting of a summary judgment must be expressly presented to the trial court by written answer or other written response to the motion and not by mere reference to summary judgment evidence. McConnell v. Southside Indep. School Dist., 858 S.W.2d 337, 341 (Tex.1993). Issues not expressly presented to the trial court in writing shall not be considered on appeal as grounds for reversal. Tex.R. Civ. P. 166a(c). Further, all theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. Casso v. Brand, 776 S.W.2d 551, 553 (Tex.1989).

■■■■ Where, as here, both sides move for summary judgment and the trial court grants one motion and denies the other, on appeal, we review the summary judgment evidence of both sides and determine all questions presented, and render judgment the trial court should have rendered. Bradley v. State ex rel. White, 990 S.W.2d 245, 247 (Tex.1999); Greg Lair, Inc. v. Spring, 23 S.W.3d 443, 446 (Tex.App.—Amarillo 2000, pet. denied).

## Summary Judgment Grounds

As the sole ground for their motion for summary judgment, the Kitten Trust and South Plains contended that they were entitled to summary judgment because the District's Board did not have the authority under law to revoke a well permit, or refuse to issue a well permit, based on the reason that to permit such a well would "allow a disproportionate amount of water to be pumped as it relates to the tract size and the District's well spacing regulations as they relate to gallons per minute per acre as set by the District's spacing rules." We construe the grounds [3] of the motion

---

**3.** Rule 166a(c) of the Texas Rules of Civil Procedure provides that a motion for sum-

mary judgment shall state the specific grounds therefor.

for summary judgment by the District to be (1) section 36 .253, which provides that the burden of proof is on the petitioner and the challenged rule order or act shall be deemed *prima facie* valid and the substantial evidence rule as defined by section 2001.174 of the Texas Government Code, and (2) a general allegation that the District complied with groundwater statutes and local rules.

By their first issue, the Kitten Trust and South Plains contend the trial court erred in granting the motion for summary judgment of the District and by the third issue, they contend the District did not have the lawful authority to apply an *ad hoc*[4] standard not part of its rules to deny a water well permit even though the applicant has satisfied all of the District's rules. Also, by their fourth issue, they contend the District cannot nullify the rule of capture. Because these three issues and argument thereunder present the issue of lawful authority of the District and its rule making power, we will consider them together.

### Applicable Water Code Provisions

■■ Because water regulation is essentially a duty of the Legislature, Sipriano v. Great Spring Waters of America, 1 S.W.3d 75, 80 (Tex.1999), and the Legislature has declared districts to be the preferred method of groundwater management, we first review several provisions of chapter 36 of the Water Code entitled "Groundwater Districts." A district has only such powers and authority as "may be conferred by law." Tex. Const. Art. XVI, § 59(b). Because the power of a district is limited by the terms of applicable statutes authorizing its creation and a district can exercise no authority that the Legislature has not clearly granted, Tri–City Fresh Water Supply Dist. No. 2 v. Mann, 135 Tex. 280, 142 S.W.2d 945, 948 (1940), the

statutes must be closely examined to determine if any statute clearly grants a district the authority to revoke or deny a well permit to prevent the production of a disproportionate amount of water as it relates to the tract size and a district's well spacing regulations as they relate to gallons per minute per acre.

■ After defining certain terms and stating the purpose of groundwater districts, by section 36.002, the Legislature confirmed ownership rights of groundwater. That section provides:

The ownership and rights of the owners of the land and their lessees and assigns in groundwater are hereby recognized, and *nothing* in this *code* shall be construed as *depriving* or *divesting* the owners or their lessees and assigns of the ownership or rights, subject to rules promulgated by a district.

(Emphasis added). By using the term *code* and not *chapter*, this section applies to groundwater notwithstanding any provision to the contrary in any other chapter of the Water Code. Because a statute is presumed to have been enacted by the Legislature with complete knowledge of the existing law and with reference to it, Acker v. Texas Water Com'n, 790 S.W.2d 299, 301 (Tex.1990), by enactment of this section effective September 1, 1995, the Legislature recognized the rule of capture as it applies to groundwater according to the decisions of the Texas Supreme Court in Houston & T.C. Ry. Co. v. East, 98 Tex. 146, 81 S.W. 279 (1904) and City of Corpus Christi v. City of Pleasanton, 154 Tex. 289, 276 S.W.2d 798, 801 (Tex.1955). Under section 36.001(1) a district is defined as an authority created under section 59, article XVI of the Texas Constitution that has the authority to "regulate the spacing of water wells, the production from water wells, or

4. Ad hoc. For this special purpose. Black's Law Dictionary 41 (6th ed.1990).

both." However, spacing of wells or regulation of production from water wells is not defined.

To implement the management responsibility, the rule making power of a district is covered by subchapter D. Among other provisions, section 36.101(a) gives a district rule making authority "to control subsidence or prevent waste of groundwater and to carry out the powers and duties provided by this chapter." Section 36.116 specifically addresses well spacing and production. This section authorizes a district to provide for well spacing and regulation of production to (1) minimize the drawdown of the water table or (2) the reduction of artesian pressure (3) to control subsidence or (4) to prevent waste. Because a district is not a state agency with statewide jurisdiction, but is a regional political subdivision, the Administrative Procedure and Practice Act does not apply,[5] except that section 2001.174 of the Government Code is made applicable under section 36.253 for purposes of judicial review of district actions.

### De Novo Review

■ By its first ground for its motion for summary judgment, the District urged that the challenged rulings of the District are deemed *prima facie* valid and the substantial evidence rule applied. Sections 36.251 through 36.254 of the Water Code contain provisions regarding judicial review of any rule or order made by a district. As applicable here, section 36.253 provides that any challenged law, rule, order, or act shall be "deemed prima facie valid," and the section provides that the substantial evidence rule covered by section 2001.174 of the Government Code shall also apply upon judicial review of a district's rule or order. However, where, as here, the ruling of a district is chal-

lenged on the ground that it did not have the authority to revoke a well permit or refuse to issue a well permit for the purpose of disallowing a disproportionate amount of water to be pumped as it related to the tract size, our review of this question of law is *de novo*. Matter of Humphreys, 880 S.W.2d 402, 404 (Tex. 1994). Accordingly, the first ground of the District is not applicable.

By its second ground, the District contended that it "complied with state groundwater statutes and local district rules in rendering the decisions which are now challenged. . . ." Because this ground raises questions of statutory authority of a district, we will combine our analysis with the contentions of the Kitten Trust and South Plains presented in their motion for summary judgment and presented here by their first, third, and fourth issues complaining that the District did not have the authority under law to revoke a well permit or refuse to issue a well permit, because to permit such a well would "allow a disproportionate amount of water to be pumped as it relates to the tract size the District's well spacing regulations as they relate to gallons per minute per acre as set by the District's spacing rules."

### Application Met Spacing Requirements

■ It is undisputed that at the hearing, the Board Manager of the District reported to the Board that the application complied with the District's spacing requirements. Minutes of the District hearing regarding application permit no. 8209 state in part that:

Mr. Wyatt said that Application for Permit Number 8209 meets the spacing requirements of the Water District. However, the question remains as to whether a 4–inch well on the 100–foot wide right-

---

**5.** *See* Tex. Gov't Code Ann. § 2001.003(7) (Vernon 2000).

of-way would take a disproportionate amount of water from the strip of land on which it is located.

By interrogatory number 7, the Kitten Trust and South Plains asked the District if any of its rules authorized or specified a "disproportionate taking" or similar standard for the grant or denial of water well permits and, if so, requested that the rule be identified. By its answer, the District designated its Rule 8 entitled "Minimum Spacing of Wells," as authorizing the district to deny a water well application permit because of "disproportionate taking" or similar standard. As material herein, the rule provides in part:

## RULE 8—MINIMUM SPACING OF WELLS

(a) Wells to be drilled after the effective date of these rules shall be spaced as follows:

A well to be equipped with a four-inch or smaller pump shall be located at least 200 yards from the nearest well or authorized well site; a well to be equipped with a five-inch pump shall be located at least 250 yards from the nearest well or authorized well site; a well to be equipped with a six-inch pump shall be located at least 300 yards from the nearest well or authorized well site; a well to be equipped with an eight-inch pump shall be located at least 400 yards from the nearest well or authorized well site; and a well to be equipped with a ten-inch or larger pump shall be located at least 440 yards from the nearest well or authorized well site. An authorized well site is not a permit to drill. An authorized well site shall be:

(1) The location of a proposed well on an application duly filed until such application is denied; or

(2) The location of a proposed well on a valid permit.

\* \* \*

(b) It is contemplated that the pumps of the respective sizes set out above shall refer to the inside diameter of the pump column pipe and shall produce water at the ordinary or usual pumping rates of pumps of such sizes. The ordinary or usual pumping rates of such pumps are to be regarded as follows:

\* \* \*

If the pump which is to be used by the applicant is of a different size or type, or is to be operated at a different rate in gallons per minute from the pumps in general use as set out above, such facts shall be made known in the application; and in such case, the actual rate at which the well is to be pumped shall be the determining factor in the spacing for such well instead of the size of the pump. A pump to be operated against an artificial head in a closed or semi-closed system shall be given special consideration.

\* \* \*

The rule contains no provisions that would authorize the denial of a permit because a well would produce a disproportionate amount of water from the land on which the proposed well is located and does not establish a minimum tract size. Further, if the proposed well site meets the minimum distance requirement between wells, the size of the tract and its shape or dimensions are irrelevant for purposes of Rule 8. Accordingly, because the application complied with the spacing rule, the District's action in revoking the well permit and denying the other application for a well permit was improper.

Moreover, the action of the District prohibiting "a disproportionate amount of wa-

ter to be pumped as it relates to tract size" was not otherwise authorized by statute because (1) such authority was not clearly authorized by the Legislature, (2) the statute did not provide reasonable standards to guide the District in exercising its powers, (3) the District was not authorized to deny a permit to prohibit the pumping of a disproportionate amount of water to be pumped as it relates to tract size based upon its alleged discretionary power.

### Not Clearly Authorized

Following the decisions of the Supreme Court in Sipriano v. Great Spring Waters of America, 1 S.W.3d 75 (Tex.1999) and Barshop v. Medina Under. Wat. Cons. Dist., 925 S.W.2d 618 (Tex.1996), it is firmly established that (1) the common law rule of capture that an owner has the right to withdraw underground percolating water is not correlative but is "absolute," and is not subject to the reasonable use rule adopted by some other jurisdictions, remains the law in Texas, and (2) as provided by section 59, article XVI of the Texas Constitution adopted in 1917, that groundwater regulation is a duty imposed on the Legislature.[6] The need for legislative regulation of water continues to be recognized. *Sipriano*, 1 S.W.3d at 79. Even though the Legislature has declared that groundwater districts are the State's preferred method of groundwater management, we must review the Water Code to determine if the Legislature has clearly authorized the action of the District.

In Tri–City Fresh Water Supply Dist. No. 2 v. Mann, 135 Tex. 280, 142 S.W.2d 945, 948 (1940), the Court held that a district "can exercise no authority that has not been *clearly* granted by the Legis-

lature." The *clearly* granted test was reaffirmed in Quincy Lee Company v. Lodal & Bain Engineers, 602 S.W.2d 262, 264 (Tex.1980). Accordingly, we presume that the applicable Water Code provisions were enacted by the Legislature with complete knowledge of the rule that any authority granted to a district must be clearly granted. Acker v. Texas Water Com'n, 790 S.W.2d 299, 301 (Tex.1990).

The action of the District to prevent the pumping of a disproportionate amount of water as it relates to the tract size is contrary to the rule of capture as applied to underground water in Texas law as established by *East*, 81 S.W. at 279, and its progeny, and also prohibited by section 36.002.[7] Moreover, although section 36.101 authorizes the District to make rules to control subsidence or prevent waste of groundwater, and section 36.116 authorizes the District to provide for spacing of water wells and regulation of production of wells for the four purposes stated in the section, these sections do not clearly authorize the District to revoke or deny a well permit to prohibit the production of a disproportionate amount of groundwater as it relates to the tract size. Because the right to withdraw underground percolating water is not correlative, but is "absolute," and the Legislature has not enacted a "reasonable use" rule as exists in other jurisdictions, *Barshop*, 925 S.W.2d at 625, and considering that by section 36.002, the Legislature provided that nothing in the Code shall deprive or divest the owners of groundwater of their ownership rights, we hold that the applicable Code provisions do not *clearly* authorize the District to enact a regional rule to

---

6. Because the rule of capture applies only to groundwater, our analysis will be limited to chapter 36 entitled Groundwater Districts.

7. Section 36.002 provided in part "and nothing in this code shall be construed as depriving or divesting the owners ... of their ownership or rights...."

prohibit the production of a disproportionate amount of groundwater as it relates to the size of the tract or to implement a reasonable use rule.

## No Reasonable Standards

■ In Texas, legislative power is defined broadly and includes the power to set public policy. FM Properties Operating v. City of Austin, 22 S.W.3d 868, 873 (Tex.2000). Article XVI Section 59 of the Texas Constitution charged the Legislature with the duty of groundwater conservation and authorized the creation of districts to have "the authority to exercise such rights, privileges and functions concerning the subject matter of this amendment as may be conferred by law." By section 36.002, the Legislature announced the state wide public policy regarding the rule of capture as applied to groundwater. It is important to note that none of the applicable code provisions make any reference to the size of the tract upon which a proposed well is to be located or address the issue of production of disproportionate volumes of water as it relates to tract size.[8] This omission is significant because omissions are presumed to be intentional. Matter of Ament, 890 S.W.2d 39, 41 (Tex. 1994).

■ Although the Legislature may delegate powers to the District to carry out legislative purposes, it must establish reasonable standards to guide the District in exercising those powers. *FM Properties Operating,* 22 S.W.3d at 873. Several code sections mention regulations to prevent waste, control subsidence, or avoid reduction of artesian pressure, but none of the sections authorize a rule creating a "rea-

sonable use" rule or address the issue of disproportionate production of water as it relates to tract size. We recognize that the last clause of section 36.002, which provides that the announced public policy is "subject to rules promulgated by a district," is nevertheless ineffective to authorize the action of the District to deny and revoke well permits in order to prevent the production of a disproportionate amount of water as it relates to tract size because the subject is not mentioned in any of the sections authorizing regulations, and the statute does not establish reasonable standards to guide the agency in exercising its rule making power as applied to the expressed public policy favoring the rule of capture.

## Section 36.002 Requires Rule

■ Moreover, the decision of the District based on discretion vested "in a groundwater District by the Legislature to regulate a natural resource" does not support the action of the District. The District does not cite any specific section of the Water Code granting such discretionary powers and we have found none. Further, under section 36.002, which, as applicable to groundwater, prevails over any other provision in the Water Code to the contrary, groundwater ownership rights are "subject to *rules,*" but the section does not make groundwater ownership rights subject to discretionary decisions of the District.

■ As above discussed, the source of the District's authority is legislative action and the District has no power that is not clearly granted by the Legislature. *Mann,* 142 S.W.2d at 948. Section 36.101

---

8. The action of the District was based on its decision to prohibit the production of volumes of water that it considered to be a disproportionate amount of water from the strip of land on which it is located. However, because the District does not cite any code provision or other authority or commentary supporting such a test it appears to be an attempt to apply a "reasonable use" rule.

gives the District the discretion to promulgate rules under the procedure that is also prescribed by the Legislature, but neither section 36.101 nor section 36.002 define the term "rule" as applicable here.[9] As applied to section 36.002, we conclude that the word *rule* contemplates an established standard prescribing a guide for conduct, regulation or principle that does not include discretionary acts of the District Board. Black's Law Dictionary, 1331 (6th ed.1990). Because section 36.002 requires that regulation of groundwater ownership rights must be by *rule* promulgated by the District, not discretionary decisions, the District did not have the authority to implement such regulation without a rule adopted after public notice and public hearing are required by Section 36.101(b). We conclude that the action of the District cannot be supported on the ground of its alleged discretion.

 We have not overlooked the District's argument that its action was proper under sections 36.113(d)(2) and 36.1131(b)(8). However, section 36.113(d)(2) is not applicable because it is concerned with the proposed use of water and not the size of the tract where the well is located. Also, section 36.113(d)(2) does not apply because water withdrawal may be limited to prevent waste, but prevention of waste was not the basis of the District's actions. Further, these sections cited by the District clearly do not authorize it to revoke or deny a well permit because such a well would allow a disproportionate amount of water to be pumped as it relates to the tract size and the well spacing regulations as they relate to gallons per minute as set by the spacing rules. Accordingly, we hold that the District's second ground will not support summary judgment, and

issues one, three, and four of the Kitten Trust and South Plains are sustained. Our sustension of these issues pretermits consideration of their second issue.

 As was also presented in *Barshop*, 925 S.W.2d at 637, the final matter which we must address is the trial court's award of attorney's fees to the District under section 37.009 of the Texas Civil Practice and Remedies Code, which may be awarded or denied in accordance with the discretion of the trial court. Oake v. Collin County, 692 S.W.2d 454, 455 (Tex.1985). Here, by its motion for summary judgment, the District also sought an award of attorney's fees and the trial court's order granted the motion for summary judgment and awarded $9,500 in attorney's fees. As in *Barshop*, because this award may no longer be valid, and because the award of attorney's fees in declaratory judgment actions is within the discretion of the trial court, we remand this cause to the trial court for it to consider and exercise its discretion regarding attorney's fees, if any, which should be awarded to the parties in the underlying case.

In conclusion, rendering judgment the trial court should have rendered, the judgment of the trial court signed January 18, 2000, is reversed and the motion for summary judgment of the Kitten Trust and South Plains is granted. It is further ordered that the actions of the District in revoking the Kitten Trust application permit no. 8149–A and the denial of South Plains's water well application permit no. 8209 are hereby declared to be null and void because such acts were in excess of the lawful authority of the District. That portion of the judgment regarding whether attorney's fees and costs should be award-

9. The Administrative Procedure and Practice Act does not apply because the District is not

a statewide agency. Section 2001.003(7).

ed to either party and the amount thereof is severed and the cause is remanded to the trial court for its determination and rendition of judgment in accordance with this opinion and its determination of the severed question.

QUINN, J., concurring.

QUINN, Justice, concurring.

I join in the judgment rendered by the majority and concur in that portion of the opinion discussing the Conservation District's deviation from Rule 8. So too do I write to say that the actions of an administrative body must be reasonable to survive judicial review. Implicit in this standard of reasonableness lies the concept of prior notice or what some would call fundamental fairness.

Admittedly, administrative bodies may regulate on an *ad hoc* or case-by-case basis. *Securities & Exchange Comm'n v. Chenery Corp.*, 332 U.S. 194, 202, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947); *Southwestern Bell Tel. Co. v. Public Utility Comm'n*, 745 S.W.2d 918, 926 (Tex.App.—Austin 1988, writ denied); *Madden v. Texas Bd. Chiropractic Examiners*, 663 S.W.2d 622, 626 (Tex.App.—Austin 1983, writ ref'd n.r.e.). Despite that power, however, those appearing before the administrative body must be afforded prior notice of the issues of fact and law which will control the result to be reached by the body. *Madden v. Texas Bd. Chiropractic Examiners*, 663 S.W.2d at 626 (imposing, *ad hoc*, a requirement restricting the practice of chiropractic medicine to those who have graduated from an accredited institution). Violating the latter principle contravenes fundamental fairness and renders the agency decision arbitrary and unreasonable. *Id.* at 626-27. In short, an administrative body cannot say that factors A, B, and C determine a particular result and

then interject factor D once the proceeding has begun.

As expressed in the majority opinion at bar, Rule 8 said nothing about a minimum number of acres needed to obtain particular well permits. So, to use that factor as a basis to revoke a permit *already issued* and deny another application pending issuance constitutes a deprivation of fundamental fairness. That is, the Kitten Family Living Trust and South Plains Lamesa Railroad, Ltd. were entitled to prior notice of the facts and law which would control the Conservation District's ultimate decision. Those two entities being denied that entitlement by the District, the latter's decision cannot stand. *Madden v. Texas Bd. Chiropractic Examiners, supra.*

For the foregoing reason, I concur in the judgment of the majority.