**DALLAS AREA RAPID TRANSIT, Appellant,**

**v.**

**THE DALLAS MORNING NEWS, Appellee .**

**No. 05–97–00666–CV.**

Court of Appeals of Texas, Dallas.

Nov. 1, 1999.

---

Don T. O'Bannon, Hyattye O. Simmons, Dallas, for Appellant.

Terence M. Murphy, Jones, Day, Reavis & Pogue, Dallas, for Appellee.

Before Chief Justice THOMAS and Justices POFF [1] and ROSENBERG.[2]

1. The Honorable H. Bryan Poff, Justice, Court of Appeals, Seventh District of Texas at Amarillo, Retired, sitting by assignment.

2. The Honorable Barbara Rosenberg, Former Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

3. We note the legislature amended section 552.103 in 1999 by adding subsection (c) which states:

> Information relating to litigation involving a governmental body or an officer or employee of a governmental body is excepted from disclosure under Subsection (a) only if the litigation is pending or reasonably anticipated on the date that the requestor applies to the officer for public information for access to or duplication of the information.

Act of May 25, 1999, 76th Leg., R.S., ch. 1319, § 6, 1999 Tex. Sess. Law Serv. 4500, 4502 (amending TEX. GOV'T CODE ANN. § 552.103).

4. Before a 1997 amendment, section 552.301 gave the governmental body ten *calendar* days

## OPINION

ROSENBERG, Justice, (Assigned).

Dallas Area Rapid Transit (DART) appeals the judgment granted in favor of the Dallas Morning News (the News) in a writ of mandamus action concerning the Texas Open Records Act (the Act). *See* TEX. GOV'T CODE ANN. §§ 552.001 to .353 (Vernon 1994 & Supp.1999). In three issues, DART contends that, because it timely asserted the litigation exception to requests for documents, the trial court had no jurisdiction to hear the mandamus action, and, further DART did not waive its right to assert the litigation exception. DART complains that the documents ordered disclosed were not subject to an open records request because the litigation exception under the Act applied to the requested documents. *See id.* § 552.103(a) (Vernon 1994).[3] DART argues that the trial court erred in hearing the matter because DART timely asserted the litigation exception, making the mandamus action improper. *See id.* §§ 552.301(a), 552.321 (Vernon Supp.1999).[4] Based on the timely assertion of the exception,

to ask the attorney general for a decision. The 1997 legislation substituted "business" for "calendar." *See* Act of May 4, 1993, 73 d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 605, *amended by* Act of June 1, 1997, 75th Leg., R.S., ch. 1231, § 5, 1997 Tex. Gen. Laws 4697, 4701 ( current version at TEX. GOV'T CODE ANN. § 552.301(a) (Vernon Supp. 1999)). Because this case arose before the effective date of the 1997 amendment, we do not consider it. Furthermore, our analysis does not depend on whether business or calendar days are counted.

The legislature further amended section 552.301 in 1999 by adding subsection (d) which states:

> A governmental body that requests an attorney general decision under Subsection (a) must provide to the requestor within a reasonable time but not later than the 10th business day after the date of receiving the requestor's written request:
> (1) a written statement that the governmental body wishes to withhold the requested information and has asked for a decision from the attorney general about whether

DART further argues it did not waive its right to assert the litigation exception. We hold the trial court had jurisdiction to hear the mandamus action and DART waived its right to assert the litigation exception by agreeing to produce and producing requested documents. Therefore, we resolve DART's three issues against it and affirm the trial court's judgment.

## FACTUAL BACKGROUND

Brooks Edgerton, a reporter for the News, made three requests to DART for documents after Francine White, a nine-year-old Dallas girl, was killed in a bus accident. The first request, made on February 11, 1997, was for documents relating to the White accident. The next two requests, made on February 13 and 14, were for documents involving other DART bus accidents over the last five years. On February 21, DART responded in writing to the News that it claimed the litigation exception under the Act for the documents related to the White accident but would produce the other accident material. DART wrote:

> DART is making available for your review and/or copies, the documents responsive to your initial and amended request for documents related to accident investigations for the last five years with the exception of documents which are not readily available.

The same day DART wrote to the attorney general:

> DART is prepared to release all existing documents requested in Attachment B [February 13 request] as clarified in the first paragraph of Attachment C [February 14 request] since they do not pertain to current accident investigations or on-

going or reasonably anticipated litigation.

DART then produced 498 pages of documents. As Edgerton reviewed the documents, he noticed documents were missing from the production. Documents referred to in other documents were not among those produced. At DART's request, Edgerton provided two clarifications of the missing documents on February 25 and 27. Then, in a February 28 letter, Edgerton summarized his difficulties in getting the documents DART had stated were "not readily available" and agreed to pay labor costs for the search. DART continued its search. On March 2, DART stated the search was complete. On March 3, Edgerton made a request for personnel records for certain employees and reports written by them.

On February 26, after DART had agreed to and did produce some accident records to the News, Michael Sampson, attorney for the Estate of Francine White, requested from DART copies of all documents obtained by Edgerton or the News "within the last 30 days related in any way to bus safety." On March 5, the Estate of Francine White filed an action against DART styled "Petition to Perpetuate Testimony." On March 6, DART was served with a lawsuit by attorneys who represented the family members of Francine White.

On March 7, DART requested an opinion from the attorney general regarding the February 25, 26, 27, and March 3 requests and any outstanding documents from the February 11, 13, and 14 requests. The News thereafter filed a petition for writ of mandamus in district court asking the court to direct DART to comply with the Act by allowing the News to inspect

the information is within an exception to public disclosure; and

   (2) a copy of the governmental body's written communication to the attorney general asking for the decision or, if the governmental body's written communication to the attorney general discloses the requested information, a redacted copy of that written communication.

Act of May 25, 1999, 76th Leg., R.S., ch. 1319, § 20, 1999 Tex. Sess. Law Serv. 4500, 4509 (amending TEX. GOV'T CODE ANN. § 552.301). As noted above, we do not consider the 1999 amendment to section 552.301 in our analysis, and all references are to this section of the government code before the 1999 amendment. *See supra* text accompanying note 3.

and copy all the remaining documents relating to the results of all DART bus accidents over the last five years. Neither the February 11 request concerning the Francine White accident nor the March 3 request was a part of this mandamus action.

After a hearing, the trial court ordered DART to produce the documents requested by the News on February 13 and 14, and as clarified on February 25 and 27, excluding the documents that pertained to the Francine White fatality. The court also rendered findings of fact and conclusions of law. DART appeals the judgment, claiming the petition for writ of mandamus was premature and the litigation exception applies to the News's open record requests.

## THE CONTROVERSY

DART takes issue with the trial court's findings that DART's request for an attorney general opinion was late. DART contends the time to request the attorney general opinion began to run from the date Sampson, the attorney for the Estate of Francine White, made his open records request to DART. DART explains it was only at the time of the Sampson request that DART could reasonably assert the litigation exception against the News. DART claims the ten days does not run from the date of the News's request but ten days from when DART perceived the request to be the subject of the White litigation, that is, the date of the Sampson request. DART argues that because it timely asserted the litigation exception and requested the attorney general opinion on March 7, the trial court did not have jurisdiction to hear the mandamus action. DART argues further that it cannot waive its litigation exception before perceiving that the exception applies.

## Standard of Review

■■■ An action for a writ of mandamus initiated in the trial court is a civil action subject to appeal as any other civil suit. *See Anderson v. City of Seven*

*Points,* 806 S.W.2d 791, 792 n. 1 (Tex. 1991); *University of Tex. Law Sch. v. Texas Legal Found.,* 958 S.W.2d 479, 481 (Tex. App.-Austin 1997, no pet.). In such actions, we review the trial court's findings of fact and conclusions of law in accordance with the standards generally applicable to a trial court's findings and conclusions. *See Anderson,* 806 S.W.2d at 794 n. 2; *Texas Legal Found.,* 958 S.W.2d at 481. That is, we review findings of fact for legal and factual evidentiary support, and we review conclusions of law *de novo. See Texas Legal Found.,* 958 S.W.2d at 481; *Smith v. McCoy,* 533 S.W.2d 457, 460 (Tex. Civ.App.-Dallas 1976, writ dism'd) (reviewing sufficiency of trial court's factual findings).

## Jurisdiction of the Trial Court

DART complains that the News did not have the right to bring the mandamus action or the right to the records it requested because, on March 7, DART timely sought an attorney general opinion concerning all the News's open records requests.

The Act provides public access to governmental documents. It provides that information is public information if, in connection with the transaction of official business, the information is collected, assembled, or maintained by a governmental body. *See* TEX. GOV'T CODE ANN. § 552.021 (Vernon Supp.1999). If the governmental body receives a written request for public information that it considers as falling under one of the statutory exceptions to disclosure, it may provide the information or, if it chooses not to disclose the information, may request the attorney general to determine whether the information is statutorily excepted from disclosure. *See id.* § 552.301(a). The governmental body has ten days to make this determination. *See id.* If the governmental body fails to request the attorney general to review the information, then the information "is presumed to be public information." *Id.*

§ 552.302 (Vernon 1994)[5]; *see City of Garland v. The Dallas Morning News,* 969 S.W.2d 548, 556 (Tex.App.-Dallas 1998, pet. granted); *Hancock v. State Bd. of Ins.,* 797 S.W.2d 379, 380 (Tex.App.-Austin 1990, no writ); *City of Houston v. Houston Chronicle Publ'g Co.,* 673 S.W.2d 316, 323–24 (Tex.App.-Houston [1st Dist.] 1984, no writ). Once the requested information is presumed to be public information because of the governmental body's failure to make a timely request for an attorney general opinion, the party requesting the information may seek a writ of mandamus to compel release of the information. *See* TEX. GOV'T CODE ANN. § 552.321 (Vernon Supp.1999).

DART admitted in the trial court that it neither filed nor asserted an exception to the News's document request within ten days of the request. Rather, DART argued the time to file the request began to run on February 26, when White's attorney filed his request to DART for the same documents, and DART first perceived the exception applied to the News's document request.

First, DART relies on Open Record Decision No. 333, Tex. Att'y Gen. ORD–333 (1982), and *Conely v. Peck,* 929 S.W.2d 630 (Tex.App.-Austin 1996, no writ) (per curiam), to support its argument. However, DART's reliance is misplaced.

In Open Record Decision No. 333, relevant correspondence between the City of Houston and the Houston Chronicle showed that a May 11 request was discussed until May 25, and both the government agency and the newspaper believed the matter could be resolved informally. It was not until May 25 that it became obvious a formal open records decision would be necessary. It also appeared

there was legitimate confusion on the City's part as to the scope of the Chronicle's request. The first request was extremely broad. The Chronicle narrowed its request to a particular document but even then failed to properly identify the document. *See* Tex. Att'y Gen. ORD–333 (1982).

■ Here, DART did not claim that it misunderstood the request when first made, and it actually produced some documents. There was no confusion when the February 13 and 14 requests were made. DART explicitly said it would produce the documents. The evidence showed the later requests were for documents referenced in the original production that were missing. There is neither testimony nor other evidence that the News's request was confusing or that the later clarifications caused DART to realize the litigation exception was involved. DART's only explanation is that Sampson, a potential litigant's attorney, asked for the same documents. This case does not present a situation of the agency not understanding the request when it was made as in Open Record Decision No. 333. *See id.*

In *Conely,* an inmate requested documents of the Texas Department of Criminal Justice—Institutional Division (The Department), a governmental body. The Department did not request an attorney general opinion or invoke an exception to the request. The Department made the documents available at its place of business. The inmate claimed that because no opinion was requested within ten days, the Department would have to provide the documents to him in jail. *See Conely,* 929 S.W.2d at 631–32. The court held that no attorney general opinion was required or

**5.** In 1999 the legislature amended section 552.302 to read as follows:

If a governmental body does not request an attorney general decision as provided by Section *552.301 and provide the requestor with the information required by Section 552.301(d)* ~~[552.301(a)]~~, the information requested in writing is presumed to be *sub-*

*ject to required* public *disclosure and must be released unless there is a compelling reason to withhold the* information.

Act of May 25, 1999, 76th Leg., R.S., ch. 1319, § 21, 1999 Tex. Sess. Law Serv. 4500, 4509 (amending TEX. GOV'T CODE ANN. § 552.302).

necessary because the Department was not claiming that the documents were not public. *See id.* at 632. Thus, there was no timeliness issue. In contrast, in the present case DART's assertion of the litigation exception is dependent on its timeliness.

Next, DART argues it may defer the operation of the ten-day period for assertion of the litigation exception until it perceived that the News's request for information relating to other accidents would be part of the White litigation. Nevertheless, DART was capable of "perceiving" the connection between the documents requested by the News and the White litigation on the date of the News's request. The contents and importance of requested records are known only to a government agency such as DART. Although DART insists it could not have raised the litigation exception at the time of the News's request, DART was aware of the potential White litigation. DART asserted the litigation exception for documents directly relating to the White accident, citing potential litigation. Additionally, DART knew that evidence of other accidents was often at issue in litigation. DART had the ability to make the connection between the request for the other accident documents and the potential White litigation at the time of the News's open records request.

■ Therefore, we hold DART's March 7 request for an attorney general opinion was untimely as to the February 13 and 14 requests as clarified on February 25 and 27. Because DART did not assert the litigation exception within the ten days provided by the Act, the information requested was presumed public. Consequently, we hold the News could bring the writ of mandamus action and the trial court had jurisdiction to hear it.

### Waiver

DART contends the evidence is legally and factually insufficient to support the trial court's findings and conclusions that DART waived its right to assert the litigation exception. In finding of fact number 7, the trial court found that DART agreed to produce the accident records to the News. In finding number 12, the trial court found that "DART produced some but not all" of the accident records to the News. In finding number 19, the trial court found that, beginning on February 28, DART refused to produce additional accident records to the News. In conclusion of law number 4, the trial court concluded, in part, that DART waived its right to invoke the litigation exception of the Act concerning the accident records by agreeing to provide such documents to the News on February 21, 1997, and thereafter producing some of the records to the News.

■ While we have held the assertion of the litigation exception was not timely, DART's waiver is not dependent on that timeliness issue. While the Act allows a governmental entity to withhold information relating to litigation to which a political subdivision is or may be a party, there is no requirement that the litigation exception be invoked. *See* TEX. GOV'T CODE ANN. § 552.103 (Vernon 1994). In fact, the Act provides that a governmental body may voluntarily disclose information and not assert an exception. *See* TEX. GOV'T CODE ANN. § 552.007 (Vernon Supp.1999).

■ In determining whether DART waived its right to assert the litigation exception, we look to see if DART intentionally relinquished a known right or intentionally acted in a manner inconsistent with claiming that right. *See Tenneco Inc. v. Enterprise Prods. Co.,* 925 S.W.2d 640, 643 (Tex.1996); *University Nat'l Bank v. MacFarland,* 635 S.W.2d 200, 202 (Tex. App.-San Antonio 1982, no writ). The elements of waiver include: (1) an existing right, benefit, or advantage; (2) actual or constructive knowledge of its existence; and (3) an actual intent to relinquish the right (which can be inferred from conduct). *See Tenneco Inc.,* 925 S.W.2d at 643. Ordinarily, the issue of waiver is a question of fact. *See id.* Where facts are clearly

established and are undisputed, however, waiver becomes a question of law. *See id.*

The uncontroverted facts show that within ten days of the News's requests, DART responded to the News and the Texas Attorney General that it would make available the documents requested about accidents other than Francine White's. DART voluntarily disclosed documents described in the News's request and produced 498 pages of documents.

DART then attempted to assert the litigation exception and requested an attorney general opinion. Although DART claims the evidence shows that it did not know it was relinquishing its litigation exception when it agreed and produced the documents, the facts do not support that contention. First, DART did know about the litigation exception involving the Francine White case because it asserted it on February 21 as to a portion of the News's request. Second, DART knew that facts about other accidents could be part of a personal injury case. At the mandamus hearing, a DART attorney stated that similar accidents are issues in accident litigation. Third, DART relinquished its right to assert the litigation exception by affirmatively stating it would produce all the documents and actually producing some of those documents.

We conclude the trial court properly found that DART waived its right to assert the litigation exception to the Act by affirmatively agreeing to produce and then producing documents to the News.

## CONCLUSION

Having resolved DART's issues against it, we affirm the trial court's judgment.