

# NUMBER 13-14-00725-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **DOS REPUBLICAS COAL PARTNERSHIP,** | **Appellant,** |
| **v.** | |
| **DAVID SAUCEDO, AS FLOODPLAIN ADMINISTRATOR AND COUNTY JUDGE OF THE MAVERICK COUNTY COMMISSIONERS COURT, AND THE MAVERICK COUNTY COMMISSIONERS COURT,** | **Appellees.** |

### On appeal from the 293rd District Court
### of Maverick County, Texas.

# OPINION

### Before Justices Rodriguez, Garza, and Longoria
### Opinion by Justice Rodriguez

Appellant Dos Republicas Coal Partnership (Dos Republicas) challenges the order

of the 293rd District Court of Maverick County denying its petition for writ of mandamus

to compel appellees David Saucedo, as Floodplain Administrator and County Judge of the Maverick County Commissioners Court, and the Maverick County Commissioners Court to grant its floodplain development permit application.[1]  By three issues, which we address out of order, Dos Republicas asserts that the trial court erred in denying its petition for writ of mandamus because:  (1) Judge Saucedo failed to perform a ministerial duty; (2) Judge Saucedo committed an abuse of discretion in denying its permit application; and (3) Judge Saucedo violated its due process rights.  We agree with Dos Republicas that the trial court erred when it concluded that Judge Saucedo did not abuse his discretion when he considered floodwater quality as a basis for his decision to deny Dos Republicas' development permit.  We reverse and remand.

## I.  BACKGROUND

This case involves unique issues pertaining to the purpose and scope of a local Maverick County, Texas ordinance and the authority of the Maverick County Floodplain Administrator in reviewing and issuing development permits.  It also involves an extensive factual history dating back to 1994.

### A.  Maverick County's Flood Damage Prevention Ordinance

In 1977, the Federal Insurance Administrator designated areas of Maverick County as "special flood hazards."  *See* 44 C.F.R. § 64.6; Maverick County, Tex., Flood Damage Prevention Ordinance art. 3, § B (Aug. 12, 1996).  In order to obtain flood insurance in areas designated as "special flood hazards," Maverick County was required to implement

---

[1] This case is before the Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket equalization order issued by the Supreme Court of Texas.  *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2015 R.S.).

a flood plain management plan for flood-prone areas.  *See* 44 C.F.R. § 60.3.  The Texas Legislature authorized political subdivisions qualifying for federal flood insurance under the National Flood Insurance Program (NFIP) to adopt and promulgate reasonable rules necessary to comply with the provisions of the Texas Water Code.  *See* TEX. WATER CODE ANN. § 16.318 (West, Westlaw through 2015 R.S.).  Specifically, the legislature enacted chapter 16 of the Texas Water Code for the express purpose of "securing flood insurance coverage under [the National Flood Insurance Act of 1968]."  *Id.* § 16.312 (West, Westlaw through 2015 R.S.).

Pursuant to section 16.318 of the Texas Water Code, the Maverick County Commissioner adopted a Flood Damage Prevention Ordinance (the Ordinance) on August 12, 1996, for the express purpose of minimizing flood losses.[2]  *Id.* § 16.318 (West, Westlaw through 2015 R.S.); Maverick County, Tex., Flood Damage Prevention Ordinance art. 1, §§ A–D.  The Ordinance complies with the requirements of the Federal Emergency Management Agency (FEMA), as codified in the code of federal regulations[3] and provides the following "Statement of Purpose":

> It is the purpose of this ordinance to promote the public health, safety and general welfare and to minimize public and private losses due to flood conditions in specific areas by provisions designed to:
>
> > (1)    Protect human life and health;

---

[2] The Ordinance provides that "[t]he Legislature of the State of Texas has in (statutes) VTS-Water Code 16.318 delegated the responsibility of local governmental units to adopt regulations designed to minimize flood losses."  Maverick County, Tex., Flood Damage Prevention Ordinance art. 1, § A (Aug. 12, 1996).  Section 16.318 of the Texas Water Code provides that "[p]olitical subdivisions which qualify for the National Flood Insurance Program, . . . may adopt and promulgate reasonable rules which are necessary for the orderly effectuation of the respective authorizations herein."  *See* TEX. WATER CODE ANN. § 16.318 (West, Westlaw through 2015 R.S.).

[3] *See* 44 C.F.R. § 60.3

(2) Minimize expenditure of public money for costly flood control projects;

(3) Minimize the need for rescue and relief efforts associated with flooding and generally undertaken at the expense of the general public;

(4) Minimize prolonged business interruptions;

(5) Minimize damage to public facilities and utilities such as water and gas mains, electric, telephone and sewer lines, streets and bridges located in floodplains;

(6) Help maintain a stable tax base by providing for the sound use and development of flood prone areas in such a manner as to minimize future flood blight areas; and

(7) Insure that potential buyers are notified that property is in a flood area.

Maverick County, Tex., Flood Damage Prevention Ordinance, art. 1, § C.

Under the ordinance, Judge Saucedo, as the current County Judge of the Maverick County Commissioners Court, also serves as the County's Floodplain Administrator. *Id.* art. 1, § A. Pursuant to the authority conveyed in the Ordinance, Judge Saucedo acts under a different capacity as Floodplain Administrator than in his role as county judge. *See id.* art. 1. As the Floodplain Administrator, Judge Saucedo reviews permits for development in the floodplain and determines whether to grant or deny the same pursuant to the provisions set forth in the Ordinance. *See id.* art. 1 § A; *see also id.* art. 4, § B(2).

## B. Facts Regarding Dos Republicas' Permit Application

In 1992, Dos Republicas Resources Co. (DRRC) applied for a surface mining permit for a 2,700 acre coal-mining project near Eagle Pass, Texas, which the Railroad

4

Commission of Texas (TRRC) granted in 1994 and issued April 11, 2000.[4]  Portions of the property lay within the FEMA designated floodplain boundaries of Elm Creek and two of its tributaries.  In 1998, DRRC submitted a floodplain development permit application to the Floodplain Administrator of Maverick County.  The Floodplain Administrator, Judge Saucedo's predecessor, approved the permit.

In January 2009, DRRC transferred its mining permit to Dos Republicas.[5]  Shortly thereafter, in November of 2009, Dos Republicas sought to "renew, revise, and expand" the existing permit and began the permitting process with the TRRC.  The new permit covers a 6,346-acre area and provides approximately 2,569 acres for mining during the seven-year "life-of-mine."  The permit proposed other "disturbances"—including office and shop facilities, a railroad loop, a coal load-out area, and diversions and ponds—include an additional 1,821 acres.  The residents of Maverick County, Maverick County, the City of Eagle Pass, and several federally designated Native American Tribes contested Dos Republicas' planned coal mining expansion before the TRRC. Nonetheless, in January 2014 the TRRC granted Dos Republicas a mining permit.

While its permit application was still pending before the TRRC, in November 2011, Dos Republicas sought a new floodplain development permit from Judge Saucedo.  Nine months after Dos Republicas submitted its application, and before Judge Saucedo acted on the application, FEMA revised its floodplain designations and issued a new floodplain map.  On September 4, 2013, Dos Republicas filed a supplemental permit application to

---

[4] This permit, although not the basis of this appeal, was involved in litigation of its own.  *See R.R. Com'm of Tex. v. Coppock,* 215 S.W.3d 559 (Tex. App.—Austin 2007, pet. denied).

[5] Dos Republicas is not organizationally related to the former permittee, DRRC.

5

address FEMA's revisions.

Judge Saucedo did not make a decision on Dos Republicas' application for over a year, and on March 25, 2015, Dos Republicas filed a petition for writ of mandamus in the 293rd District Court of Maverick County, seeking to compel Judge Saucedo to act on its application. Approximately two weeks later, Judge Saucedo issued an order stating "I am in receipt of Dos Republicas['] Request for Floodplain Permit. After reviewing the Request, I am hereby denying it." Dos Republicas then amended its petition for writ of mandamus, seeking to compel Judge Saucedo to issue the floodplain development permit. Dos Republicas contended before the trial court that mandamus was appropriate to compel Judge Saucedo to perform a ministerial function and, in the alternative, that Judge Saucedo abused his discretion by denying Dos Republicas' application and by failing to provide findings of fact and conclusions of law with the denial. Dos Republicas also contended that the permitting process violated its rights to procedural due process. On October 9, 2014, after a full evidentiary hearing, the trial court denied Dos Republicas' petition for writ of mandamus and later entered specific findings of fact and conclusions of law. This appeal followed.

## II.    STANDARD OF REVIEW

"A writ of mandamus will issue to compel a public official to perform a ministerial act." *Withers v. Comm'rs Ct. of Bandera County,* 75 S.W.3d 528, 529 (Tex. App.—San Antonio 2002, no pet.) (citing *Anderson v. City of Seven Points,* 806 S.W.2d 791, 793 (Tex. 1991); *Medina County Comm'rs Ct. v. Integrity Group, Inc.*, 21 S.W.3d 307, 309 (Tex. App.—San Antonio 1999, pet. denied)). Generally, mandamus will not issue to compel a public official to perform an act which involves an exercise of discretion.

*Anderson,* 806 S.W.2d at 793. However, mandamus may issue in a proper case to correct a clear abuse of discretion by a public official. *Id.* Mandamus may also issue to correct a due process violation. *Milikin v. Jeffrey,* 299 S.W. 397, 398 (Tex. 1927) (orig. proceeding) ("Mandamus is an available remedy where the elements of due process have not been accorded to one rightfully entitled thereto.").

An action for a writ of mandamus initiated in the trial court is a civil action subject to appeal as any other civil suit. *Anderson,* 806 S.W.2d at 792 n.1. In such an action, we determine whether the trial court erred by reviewing the trial court's findings of fact and conclusions of law in accordance with standards generally applicable to a trial court's findings and conclusions. *Id.* at 794 n.2; *see also Moffitt v. Town of South Padre Island,* No. 13-14-00453-CV, 2001 WL 34615363, at *2 (Tex. App.—Corpus Christi Nov. 1, 2001, no pet.) (mem. op.). We review findings of fact for legal and factual evidentiary support, and we review conclusions of law de novo.[6] *Dallas Area Rapid Transit v. Dallas Morning News*, 4 S.W.3d 469, 473 (Tex. App.—Dallas 1999, no pet.); *see also Moffitt,* 2001 WL 34615363, at *2–3.

While findings of fact have the same force and dignity as a jury's verdict upon jury

---

[6] The following standards are used when reviewing a trial court's fact findings. For a legal sufficiency challenge, we consider the evidence in the light most favorable to the fact-finder's decision and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). When performing a factual sufficiency review of the trial court's fact findings, we consider all evidence to determine if the trial court's finding is "so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.* at 826.

When reviewing the trial court's legal conclusions, we evaluate them independently, determining whether the trial court correctly drew the legal conclusions from the facts. *Dallas Morning News v. Bd. of Trs.,* 861 S.W.2d 532, 536 (Tex. App.—Dallas 1993, writ denied). Conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Mack v. Landry,* 22 S.W.3d 524, 528 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citing *Spiller v. Spiller,* 901 S.W.2d 553, 556 (Tex. App.—San Antonio 1995, writ denied)).

questions, they are not conclusive when a complete reporter's record appears in the record, as here. *See Tucker v. Tucker,* 908 S.W2d 530, 533 (Tex. App.—San Antonio 1995, writ denied). The legal conclusions of the trial court are not binding upon an appellate court; instead, the appellate court is free to draw its own legal conclusions. *See Pegasus Energy Group, Inc. v. Cheyenne Pet. Co.*, 3 S.W.3d 112, 121 (Tex. App.—Corpus Christi 1999, pet. denied).

### III.   DUE PROCESS

By its third issue, which we address first, Dos Republicas contends that the trial court erred when it determined that Judge Saucedo did not abuse his discretion when he denied Dos Republicas' permit application without a hearing. The trial court entered a "conclusion of law" that

> the Ordinance does not deprive [Dos Republicas] of the use of its property because [Judge Saucedo's] denial of [Dos Republicas's] Development Permit Application does not deprive it of all economically viable uses of its property, therefore due process is not an issue, and the denial was not arbitrary or capricious or an abuse of discretion.

We review the trial court's conclusion de novo. *Dallas Area Rapid Transit,* 4 S.W.3d at 473. The trial court's conclusion of law will be upheld if it can be sustained on any legal theory supported by the evidence*. Mack,* 22 S.W.3d at 528; *Spiller,* 901 S.W.2d at 556.

"A deprivation of personal property without due process violates the United States and Texas Constitutions." *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex*., 136 S.W.3d 643, 658 (Tex. 2004); *see Smith v. City of League City*, 338 S.W.3d 114, 127 (Tex. App.—Houston [14th Dist.] 2011, no pet.). The right to procedural due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner with respect to a decision affecting an individual's property rights. *Tex. Workers'*

8

*Comp. Comm'n*, 136 S.W.3d at 658; *see Smith*, 338 S.W.3d at 127.

Under Texas common law, property ownership comes with a "bundle of rights" which includes, among other things, the rights of possession and use. *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 382–83 (Tex. 2012). However, property owners do not have a constitutionally protected, vested right to use property in any certain way without restriction. *City of La Marque v. Braskey*, 216 S.W.3d 861, 863 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Thus, limitations on property rights may be imposed by appropriate government action under its police power. *Severance v. Patterson*, 370 S.W.3d 705, 710 (Tex. 2012).

A right is "vested" when it "has some definitive, rather than merely potential existence." *Braskey,* 216 S.W.3d at 864 (citing *Tex. S. Univ. v. State Street Bank & Trust Co.*, 212 S.W.3d 893, 903 (Tex. App.—Houston [1st Dist.] 2007, no pet.); BLACK'S LAW DICTIONARY 1595 (8th ed. 2004) (defining "vested" as "[h]aving become a completed, consummated right for present or future enjoyment; not contingent; unconditional; absolute")). Dos Republicas' asserted harms—the denial of the permit and subsequent inability to commence operations—concern the potential use of its property for mining, which is not a constitutionally protected vested right. *See id.* (finding that the plaintiff had no vested property right when a city ordinance restricted plaintiff's use of her property as a cat shelter). We therefore determine the trial court drew the correct legal conclusion from the facts and did not err when it concluded that due process was not at issue. *See Dallas Area Rapid Transit,* 4 S.W.3d at 473. We overrule Dos Republicas' third issue.

## IV. MINISTERIAL OR DISCRETIONARY DUTY TO GRANT PERMIT APPLICATION

By its first issue, Dos Republicas challenges the trial court's denial of its petition

9

for writ of mandamus by contending that Judge Saucedo, as the Floodplain Administrator, had a purely ministerial duty to grant its permit application. In denying the petition, the trial court concluded that, "[t]he Floodplain Administrator was not required, and did not have a ministerial duty to grant [Dos Republicas's] Development Permit Application and Supplemental Application if the Floodplain Administrator found that the application did not meet the provisions of the Ordinance and relevant factors." We review the trial court's conclusion de novo. *See Dallas Area Rapid Transit,* 4 S.W.3d at 473.

Ministerial acts are those for which "the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Ballantyne v. Champion Builders, Inc.,* 144 S.W.3d 417, 425 (Tex. 2004) (citing *Comm'r of the Gen. Land Office v. Smith*, 5 Tex. 471, 479 (1849)). "If the public official must obey an order, without having any choice in complying, the act is ministerial." *Id.* (citing *City of Lancaster v. Chambers,* 883 S.W.2d 650, 654 (Tex. 1994)). If an action involves personal deliberation, decision, and judgment, however, it is discretionary. *Id.*

The County Judge of Maverick County, as the designated floodplain administrator, oversees the requirements of the Ordinance. Maverick County, Tex., Flood Damage Prevention Ordinance art. 1, § A. As part of that responsibility, the Floodplain Administrator is tasked with "[r]eview[ing] permit application[s] to determine whether proposed building site[s] . . . will be reasonably safe from flooding" and is also required to "review, approve, or deny all applications for development permits required by adoption of this ordinance." *Id.*

The Ordinance sets forth the required permit procedures for building or

10

development in a FEMA designated floodplain.  *See generally id.* art 4, § C.  For instance, section C(1) of the Ordinance requires an individual to submit forms "showing the location, dimensions, and elevation of proposed landscape alterations, existing and proposed structures, . . . and the location of the foregoing in relation to areas of special flood hazard."  *Id.* art. 4, § C(1).  That section also requires information pertaining to elevation, a certificate from a registered professional engineer regarding floodproofing criteria, and a "description of the extent to which any watercourse or natural drainage will be altered or relocated as a result of proposed development."  *Id.*

Approval or denial of a permit is further based on "all of the provisions of this [O]rdinance" and ten enumerated factors.  *Id.* art. 4, § C(2).  Those ten factors are:

(a)     The danger to life and property due to flooding or erosion damage;

(b)     The susceptibility of the proposed facility and its contents to flood damage and the effect of such damage on the individual owner;

(c)     The danger that materials may be swept onto other lands to the injury of others;

(d)     The compatibility of the proposed use with existing and anticipated development;

(e)     The safety of access to the property in times of flood for ordinary and emergency vehicles;

(f)     The costs of providing governmental services during and after flood conditions including maintenance and repair of streets and bridges, and public utilities and facilities such as sewer, gas, electrical and water systems;

(g)     The expected heights, velocity, duration, rate of rise and sediment transport of the flood waters and the effects of wave action, if applicable, expected at the site;

(h)     The necessity to the facility of a waterfront location, where applicable;

11

(i)  The availability of alternative locations, not subject to flooding or erosion damage, for the proposed use; [and]

(j)  The relationship of the proposed use to the comprehensive plan for that area.

*Id.* art. 4, §§ C(2)(a)–(j).  The above ten factors are not simple "check-the-box" factors, but instead require the Floodplain Administrator to consider the impact that the development would have on both the individual applying for the permit and the community at large.  *See id.*

Given the decision-making powers the Ordinance grants to Judge Saucedo, we are not persuaded by Dos Republicas' argument that Judge Saucedo had a ministerial duty to grant its application.  Dos Republicas asserts that the Ordinance lists all necessary requirements to obtain a permit and that because it fulfilled those requirements, Judge Saucedo had only one option—to grant the permit.  We agree with Dos Republicas that it met the stated requirements set forth in article 1, subsection C(1), however, the requirements for a development permit do not begin and end with subsection C(1).  *See id.* art. 4, § C(1)–(2).  The factors enumerated in art. 4 section C(2) must also be considered by Judge Saucedo when granting or denying a development permit.  *See id.*  The subsection C(2) factors Judge Saucedo is directed to consider require him to utilize his discretion and judgment in analyzing whether the permit application should be granted or denied.  *See id.* art. 4, § C(2).

As such, Floodplain Administrator Judge Saucedo's duty to "determine whether proposed building site[s] . . . will be reasonably safe from flooding" is a discretionary one. *See id.* art. 4, § B(2); *Ballantyne,* 144 S.W.3d at 425.  The decision to grant or deny a development permit is not one for which "the law prescribes and defines the duty to be

performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment."[7]  *See Ballantyne,* 144 S.W.3d at 425*.*  Judge Saucedo's grant or denial of a development permit is an action that involves personal deliberation, decision, and judgment:   it is therefore discretionary.  *See id.*

We determine the trial court drew the correct legal conclusion from the facts before it when it concluded that Judge Saucedo's duty was discretionary.  *See id.*; *Mack*, 22 S.W.3d at 528; *Dallas Area Rapid Transit,* 4 S.W.3d at 473; *Spiller*, 901 S.W.2d at 556. Therefore, the trial court did not err in reaching its conclusion.   *See Mack*, 22 S.W.3d at 528; *Dallas Area Rapid Transit,* 4 S.W.3d at 473; *Spiller*, 901 S.W.2d at 556.   We overrule Dos Republicas' first issue.

## VII.   SCOPE OF FLOODPLAIN ADMINISTRATOR'S CONSIDERATION AND REVIEW

By its second issue, Dos Republicas contends alternatively that the trial court erred in finding that Judge Saucedo did not abuse his discretion in denying its development permit.   Dos Republicas asserts via three subissues that the trial court's findings of fact and conclusions of law were made in error because Judge Saucedo abused his discretion by:   (a) failing to consider the Ordinance's mandatory factors; (b) failing to provide any reason or explanation for denying the permit; and (c) considering irrelevant factors outside of the Ordinance's exclusive list.   We review the contested findings of fact for legal and

---

[7] In its briefing, Dos Republicas argues that, because it conclusively established that it was entitled to have the permit granted, the permitting process was ministerial.   This argument incorrectly assumes that the strength of the permit application itself, as opposed to the provisions of the Ordinance, dictate whether an action is ministerial or discretionary.   We disagree with Dos Republicas—whether Judge Saucedo's review was discretionary or ministerial depends on the authority granted to him by the Ordinance and not on the strength of the permit application.   *See Ballantyne v. Champion Builders, Inc.,* 144 S.W.3d 417, 425 (Tex. 2004) (noting that ministerial acts are those for which "the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment").

13

factual evidentiary support, and we review conclusions of law de novo. *See Dallas Area Rapid Transit,* 4 S.W.3d at 473; *see also Moffitt,* 2001 WL 34615363, at *2.

### A.     Order Requirements

Dos Republicas asserts in its subissue (b) that Judge Saucedo abused his discretion by denying its permit application via a two sentence letter and claims that Judge Saucedo was required to provide his reasons for denying Dos Republicas' permit.[8] The trial court found that the Ordinance does not require the Floodplain Administrator's written denial to specifically address the requirements and/or factors considered as the basis for the decision.[9] The trial court also concluded that Judge Saucedo was "not required to provide the reasons for denying [Dos Republicas's] Development Permit Application and Supplemental Application at the time of issuing the denial, and the failure to do so did not constitute an abuse of discretion." We review the trial court's conclusion of law de novo and determine whether the trial court correctly drew its legal conclusions from the facts. *See Dallas Area Rapid Transit,* 4 S.W.3d at 473.

In support of its argument, Dos Republicas cites Alabama case law from the 1970s for the proposition that it is an abuse of discretion to deny a permit application "without any statement of the reasons for denying the building permit." *Pritchett v. Nathan Rodgers Const. & Realty Corp.,* 379 So.2d 545, 547 (Ala. 1979). We disagree with Dos Republicas that *Pritchett* stands for that proposition. We note that the portion of the

---

[8] Because Dos Republicas' argument in support of sub-issue (a) depends in part on our determination of its sub-issue (b), we address sub-issue (b) first.

[9] Dos Republicas did not specifically contest the trial court's finding that the Ordinance does not require the written order to contain the basis for the decision.

opinion cited in Dos Republicas' brief was a recitation of the party's contention and was not the holding of the Alabama Supreme Court. *See Pritchett*, 379 So. 2d at 547. In Pritchett, the Alabama Supreme Court held that the City abused its discretion by arbitrarily exercising its authority on a "case-by-case" basis. *Id.* at 548.

Dos Republicas proceeds to argue that the power of Texas courts to judicially review Judge Saucedo's decision necessarily implies a power to require Judge Saucedo to supply any reasons or explanations necessary for understanding the final order. The Texas Supreme Court has stated that an explanatory order is essential for judicial review of an agency order, stating that appellate courts "may only consider what was written by the Commission in its order, and we must measure its statutory sufficiency by what it says." *Morgan Drive Away, Inc. v. R.R. Comm'n of Tex.,* 498 S.W.2d 147, 152 (Tex. 1973) (recognizing that the enabling legislation required the commission to enter written findings of fact to support its order); *see City of El Paso v. El Paso Elec. Co.,* 851 S.W.2d 896, 900 (Tex. App.—Austin 1993, writ denied) (holding that judicial review "implies a power to require the Commission to supply any reasons or explanations necessary for the reviewing court to understand the Commission's final order" so that there may be "meaningful judicial review" rather than a "charade of the real thing"). *But see Webster v. Tex. Water Rights Comm'n,* 518 S.W.2d 607, 610 (Tex. App.—Austin 1975, writ ref'd n.r.e.) (recognizing that "[u]nder the administrative procedure of the State, the courts have not required an agency to include findings and conclusions in an administrative order when such were not required by statute").

We note that the cases relied on by Dos Republicas involve Texas administrative agencies. The Texas Government Code defines a "state agency" as: "a state officer,

15

board, commission, or department with statewide jurisdiction that makes rules or determines contested cases." TEX. GOV'T CODE ANN. § 2001.003(7) (West, Westlaw through 2015 R.S.). Judge Saucedo, as Floodplain Administrator of Maverick County, does not qualify as a state agency as defined in the government code and neither the enabling legislation nor the Ordinance require more than the approval or denial of permit applications. *See id.;* TEX. WATER CODE ANN. § 16.318; *see also South Plains Lamesa R.R., Ltd., v. High Plains Underground Water Conservation Dist. No. 1,* 52 S.W.3d 770, 777 (Tex. App.—Amarillo 2001, no pet.) (recognizing that the Administrative Procedure and Practice Act does not apply to a water district because it is not a state agency with statewide jurisdiction, but is instead a regional political subdivision). Therefore, the above cases detailing agency procedure are helpful, but they are not controlling.

However, assuming without deciding that a meaningful judicial review from the denial of a permit by a floodplain administrator is required, we disagree that Dos Republicas has been denied its opportunity for judicial review as a result of Judge Saucedo's two sentence denial. The parties had a full evidentiary hearing before the trial court—Dos Republicas even referred to it as a "trial on the merits" in its briefing. Dos Republicas also submitted the deposition transcript of Judge Saucedo as evidence where Judge Saucedo was questioned at length about the basis of his ruling. The record before this Court fully discloses Judge Saucedo's reasons for denying Dos Republicas' development permit. *See, e.g., Morgan Drive Away,* 498 S.W.2d 152; *c.f. Village of Tiki Island v. Premier Tierra Holdings, Inc.,* 464 S.W.3d 435, 442 (Tex. App.—Houston [14th Dist.] 2015, no pet. h.) (recognizing that the plaintiff's request for declaratory relief failed to present a justiciable controversy because the *record* did not disclose the reasons why

16

the City denied the permit).   Requiring the record to show Judge Saucedo's basis for the denial preserves the court's ability to engage in a meaningful judicial review without adding requirements not included in the Ordinance.

Because the basis for Judge Saucedo's ruling was apparent from the record before the trial court we agree with the trial court's legal conclusion that Judge Saucedo was not required to provide his reasons for denying the permit at the time of issuing the denial. *See Morgan Drive Away,* 498 S.W.2d 152.   We conclude that the trial court did not err when it determined that Judge Saucedo did not abuse his discretion by issuing a two sentence denial letter instead of explaining his reasons in more detail.   *See Dallas Area Rapid Transit*, 4 S.W.3d at 473; *see also Moffitt*, 2001 WL 34615363, at *2.   We overrule subsection (b) of Dos Republicas' second issue.

## B.      Consideration of Mandatory Factors

Dos Republicas also asserts that Judge Saucedo abused his discretion because he failed to consider factors the legislature directed him to consider.   The trial court entered a "finding of fact" that Judge Saucedo "based his decision to deny [Dos Republicas'] Development Permit on all of the provisions of the Ordinance and the relevant factors, as he was authorized to do by article 4 of the Ordinance" and entered a "conclusion of law" that Judge Saucedo "considered all of the provisions of the Ordinance as well as the relevant factors as per article 4, section C(2) of the Ordinance, and denial of [Dos Republicas'] Development Permit did not constitute an abuse of discretion."

We review the trial court's fact finding that Judge Saucedo properly based his decision on the provisions of the Ordinance and all relevant factors for legal and factual evidentiary support.   *See Dallas Area Rapid Transit,* 4 S.W.3d at 473; *see also Moffitt,*

17

2001 WL 34615363, at *2. We review de novo the trial court's legal conclusion that Judge Saucedo did not abuse his discretion. *See Dallas Area Rapid Transit,* 4 S.W.3d at 473; *see also Moffitt,* 2001 WL 34615363, at *2

A public official acting pursuant to statutory authority abuses its discretion when it fails to consider a factor the legislature directs it to consider. *See City of El Paso v. Pub. Util. Comm'n,* 883 S.W.2d 179, 184 (Tex. 1994); *see also Stolte v. County of Guadalupe,* No. 04-04-00083-CV, 2004 WL 2597443, at *4 (Tex. App.—San Antonio Nov. 17, 2004, no pet.) (mem. op.) (recognizing that a commissioners court cannot add substantive requirements not contained within a statute). The legislature delegated its rule-making authority, through section 16.318 of the water code, to political subdivisions qualifying for the National Flood Insurance Program. *See* TEX. WATER CODE ANN. § 16.318. Maverick County, as a qualifying political subdivision, adopted the Ordinance to control floodplain development. The Ordinance controls the considerations and requirements involved in the permit application process. *See* Maverick County, Tex., Flood Damage Prevention Ordinance art. 4, § C(2). Judge Saucedo abused his discretion if he did not comply with the requirements of the Ordinance in reviewing and deciding Dos Republicas' permit application.

### 1.    Factors to be Considered

As a preliminary matter, we must determine which parts of the Ordinance Judge Saucedo was required to consider in making his decision to grant or deny development permits. Dos Republicas contends that Judge Saucedo was limited to consider only the factors and requirements contained in the permitting section, which is article 4, section C. However, Judge Saucedo responds that article 4, section C(2) directs him to consider "all

18

of the provisions" of the Ordinance. To determine the scope of Judge Saucedo's review, as set by Maverick County under the rule-making authority delegated from the Texas Legislature, we will construe the Ordinance pursuant to the rules of statutory construction.

The same rules that govern statutory construction apply to the construction of municipal ordinances. *Greater Houston German Shepherd Dog Resuce, Inc. v. Lira,* 447 S.W.3d 365, 370 (Tex. App.—Houston [14th Dis.] 2014, pet. filed) (citing *Seawall E. Townhomes Ass'n, Inc. v. City of Galveston*, 879 S.W.2d 363, 364 (Tex. App.—Houston [14th Dist.] 1994, no writ)). "Our primary objective is to give effect to the enacting body's intent." *Id.* (citing *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011)). When construing an ordinance, we presume "the ordinance is intended to be effective, a just and reasonable result is intended, a result feasible of execution is intended, and the public interest is favored over private interest." *Id.* The literal text of the provision is the most reliable expression of the intent of an ordinance. *See Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651 (Tex. 2006).

We also presume that the language of the ordinance was carefully selected and that every word and phrase was used for a purpose. *See Tex. Lottery Comm'n v. First State Bank of DeQueen,* 325 S.W.3d 628, 635 (Tex. 2010). We avoid treating any language as surplusage where possible. *Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000). In addition, we consider the ordinance as a whole rather than its isolated parts. *See Edwards v. City of Tomball*, 343 S.W.3d 213, 221 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Both parties agree that Judge Saucedo was required to consider the requirements and factors set out in article 4, section C. However, the parties dispute the meaning of

the following text from section C(2): "Approval or denial of a Development Permit by the Floodplain Administrator shall be based on all of the provisions of this ordinance *and* the following relevant factors[.]" Maverick County, Tex., Flood Damage Prevention Ordinance art. 4, § C(2) (emphasis added). Our primary objective is to give effect to the County Commissioner's Court's intent in enacting the Ordinance. *See Lira,* 447 S.W.3d at 370. The stated purpose of the ordinance is "to promote the public health, safety and general welfare and to minimize public and private losses due to flood conditions in specific areas . . . ." *Id.* art. 1, § C. We presume the Ordinance is effective, just, reasonable, feasibly executed, and that public interest is favored over private interest. *See id.* In reviewing the literal text of the Ordinance, which is the most reliable expression of intent, we note the conjunctive use of "and" between "the provisions of this ordinance" and "the following relevant factors." *See Johnson,* 209 S.W.3d at 651. We presume that the conjunctive "and" was carefully and purposefully used. *See Tex. Lottery Comm'n,* 325 S.W.3d at 635. A logical reading of the section's use of the conjunctive therefore requires Judge Saucedo to consider both the general provisions of the Ordinance and the specific relevant factors and requirements set forth in article 4, section C. *See* Maverick County, Tex., Flood Damage Prevention Ordinance art. 4, § C. Otherwise, the language in specifying that the approval or denial of a permit be based on "all of the provisions of this ordinance" would be rendered surplusage. *See Spradlin,* 34 S.W.3d at 580 (recognizing that courts should avoid treating language as surplusage). Further, reviewing permits for compliance with the Ordinance as a whole favors the public interest. *See Lira,* 447 S.W.3d at 370. Considering the Ordinance as a whole, we construe the Ordinance to require Judge Saucedo to consider the whole Ordinance *and*

20

the relevant enumerated factors in granting or denying a development permit. *See Edwards,* 343 S.W.3d at 221.

### 2. Factors Actually Considered

Now that we have determined that Judge Saucedo was required to look to the whole Ordinance, including the permitting provisions of article 4, section C, we next address Dos Republicas' contention that Judge Saucedo did not consider any of the ten factors set out in article 4, section C(2) of the Ordinance. In support of its position, Dos Republicas raises the following arguments: (1) Judge Saucedo's two sentence denial letter is evidence he failed to consider the required factors; (2) Judge Saucedo testified that he did not consult with an expert prior to denying the permit application; and (3) Judge Saucedo testified that he did not consider the permit application or the attached expert report.

Initially, as we determined above, Judge Saucedo was not required to include the reasons he denied the permit in the denial itself. While Judge Saucedo admitted that he did not consult with an engineer in reviewing the permit, we do not find any provision in the Ordinance that would require him to do so—failure to consult an engineer does not equate to a failure to consider the Ordinance's mandatory factors. Additionally, Judge Saucedo testified that: (1) he reviewed Dos Republicas' permit application; (2) the application met the criteria in article 4, section C(1); (3) he disagreed that the application met the criteria of article 4, section C(2) (a)–(c); and (4) he considered all factors and the Ordinance as a whole in making his determination.

We find there was both factually and legally sufficient evidence in the record to support the trial court's finding of fact that Judge Saucedo based his decision to deny the

permit on all of the provisions of the Ordinance. *See Dallas Area Rapid Transit,* 4 S.W.3d at 473; *see also Moffitt,* 2001 WL 34615363, at *3. We further find that the trial court correctly drew its legal conclusions from the facts in its conclusion of law that Judge Saucedo considered all provisions of the Ordinance as well as the relevant factors, and that the denial of Dos Republicas's development permit on that basis did not constitute an abuse of discretion. *See Dallas Area Rapid Transit,* 4 S.W.3d at 473; *see also Moffitt,* 2001 WL 34615363, at *3. We overrule subissue (a) of Dos Republicas' second issue.

### C.      Consideration of Irrelevant Factors

Dos Republicas also asserts that Judge Saucedo abused his discretion because he considered irrelevant factors in denying Dos Republicas' permit. Specifically, Dos Republicas points to Judge Saucedo's statements and discovery responses where he indicates that he based his decision on the best interest of Maverick County, his personal experiences, coal mining regulations, and floodwater quality concerns. The trial court entered a "conclusion of law" that Judge Saucedo "did not consider any irrelevant factors when denying [Dos Republicas's] Development Permit Application" and that he did not abuse his discretion. The trial court also entered "findings of fact" that the "best interest" of Maverick County, Judge Saucedo's personal experiences, the Texas Coal Mining Regulations, and floodwater quality were not bases for Judge Saucedo's decision, standing alone, but were mere references when considering factors (a)–(c) of article 4, subsection C(2). We review the trial court's fact findings that Judge Saucedo did not consider irrelevant factors for legal and factual evidentiary support. *See Dallas Area Rapid Transit,* 4 S.W.3d at 473; *see also Moffitt,* 2001 WL 34615363, at *2. We review the trial court's legal conclusion that Judge Saucedo did not abuse his discretion de novo.

22

*See Dallas Area Rapid Transit,* 4 S.W.3d at 473; *see also Moffitt,* 2001 WL 34615363, at *2.

### 1. Applicable Law

A political subdivision may not exceed the powers granted it when exercising its authority. *See S. Plains Lamesa R.R., Ltd.,* 52 S.W.3d at 779 (recognizing that "a district can exercise no authority that has not been *clearly* granted by the Legislature."). If a political subdivision considers factors beyond those found in the relevant enabling legislation, then it is acting beyond its delegated authority. *See id.* Such action is therefore arbitrary, capricious and constitutes an abuse of discretion. *See id.; see also Tex. Dep't of Ins. v. State Farm Lloyds,* 260 S.W.3d 233, 256 (Tex. App.—Austin 2008, no pet.).

In *State Farm Lloyds,* the Austin Court of Appeals determined that the Department of Insurance acted arbitrarily and capriciously when it considered a factor not listed in the code as a basis for denying an insurance rate requested by State Farm Lloyds. *See* 260 S.W.3d at 256. The Austin Court held:

> [E]ven if some of the factors on which the order was based were relevant, at least one of the factors was irrelevant. In other words, even if the commissioner also considered other legally relevant factors, the order was based in part on at least one legally irrelevant factor. . . . Because the commissioner considered at least one legally irrelevant factor in issuing his order, we agree that the order is arbitrary and capricious.

*Id.; see also State of Tex.'s Agencies and Inst. of Higher Learning v. Pub. Utility Comm'n of Tex.,* 450 S.W.3d 615, 625 (Tex. App.—Austin 2014, pet. filed) (recognizing that an agency's decision is arbitrary and capricious or results from an abuse of discretion if the agency considers an irrelevant factor); *Stolte,* No. 04-04-000083-CV, 2004 WL 2597443,

23

at *4 (holding that the Guadalupe Commissioners Court abused its discretion when it reviewed two factors that it was not directed to when reviewing a plat application).

The Amarillo Court of Appeals has also addressed this issue. *See S. Plains Lamesa R.R.,* 52 S.W.3d at 774. In that case, a landowner sought and received a permit to drill a well on its property. *Id.* After the permit issued, other neighboring landowners complained to the water district, causing the water district to revoke the permit. *Id.* The district stated that the property description was insufficient to establish that well spacing regulations were met. *Id.* The landowner filed another permit application that remedied alleged deficiencies and complied with the district's spacing requirements. *Id.* The second permit application was denied though the district admitted that the landowner complied with the spacing requirements. *Id.* After the neighboring landowners filed suit, the district admitted that it denied the permit to "prevent disproportionate taking of water." *Id.* The court found that "[t]he rule contains no provisions that would authorize the denial of a permit because a well would produce a disproportionate amount of water . . . ." and held that "the district's action in revoking the well permit and denying the other application for a well permit was improper." *Id.* at 778.

Because considering even one legally irrelevant factor in issuing an order makes it arbitrary and capricious, we must determine if Judge Saucedo considered factors and/or provisions not contemplated by the Ordinance when he denied Dos Republicas' permit application. *See State Farm Lloyds,* 260 S.W.3d at 256*; S. Plains Lamesa R.R.,* 52 S.W.3d at 778.

### 2. Discussion

As the Floodplain Administrator, Judge Saucedo had only the authority conveyed to him pursuant to the Ordinance. The Ordinance delegated to Judge Saucedo the authority to grant or deny permit applications for development in the Maverick County floodplain. Maverick County, Tex., Flood Damage Prevention Ordinance art. 4, § B(2). The Ordinance also set forth the guidelines Judge Saucedo was required to follow in granting or denying permits—consideration of factors not found in the ordinance would constitute an abuse of discretion. *See id.*; *see also State Farm Lloyds,* 260 S.W.3d at 256.

Judge Saucedo stated, via his deposition and his response to interrogatories, that he considered the best interest of the community, his personal experiences dealing with flooding in the past, the Texas Mining Code, and floodwater quality in determining that Dos Republicas' permit application did not satisfy factors (a)–(c) of article 4, section C(2) of the Ordinance. Though the above considerations are not expressly contained in the Ordinance, the trial court found that they were not a basis for Judge Saucedo's decision, but were instead references Judge Saucedo used in considering enumerated factors (a)–(c). The trial court also entered a separate fact finding that Judge Saucedo "denied [Dos Republicas's] permit based upon the concern that if the permit was approved, the occurrence of a flooding event (such as the flooding events experienced by Maverick County in the past) will carry sediment and/or contaminants downstream into homes of Maverick County citizens and into Elm Creek."

We agree with the trial court that Judge Saucedo's personal knowledge of past flooding events was relevant as a reference in considering factors (a)–(c) and that "the best interest of the community" is appropriate when considering the designated factors in

25

light of the stated purpose of the Ordinance. We also agree with the trial court that the Texas Mining Code was relevant to a determination of factors (a)–(c) because it provided important guidelines for the planning and construction of sediment ponds in flood zones. It is clear that Judge Saucedo had a number of concerns regarding Dos Republicas' planned sediment ponds and their ability to contain a sufficient capacity of storm water in a severe storm or in the face of concurrent storms.

However, Judge Saucedo also considered the effect the sediment ponds might have on floodwater quality and potential downstream contamination. This is referenced in the trial court's finding that Judge Saucedo based his denial on the potential that a flooding event would carry "sediment and/or contaminants" downstream into homes of Maverick County citizens. The use of "and/or" in the trial court's finding suggests as possible the conclusion that Judge Saucedo denied Dos Republicas' permit based solely on his concern that contaminants could be carried downstream in a flooding event. *See In re United Scaffolding, Inc.*, 377 S.W.3d 685, 689–90 (Tex. 2012) (orig. proceeding) (recognizing that the use of "and/or" "inherently leads to ambiguity and confusion" and leaves open the possibility that one factor is the sole rationale). Though the trial court could have found that the Ordinance requires Judge Saucedo to consider the transport of sediment in granting or denying a permit application, at no point does the Ordinance address "floodwater quality" or "contaminants." *See generally* Maverick County, Tex., Flood Damage and Prevention Ordinance art. 1, § A, *et. seq.*

The Ordinance, when read as a whole, does not give Judge Saucedo the authority to regulate "floodwater quality" or possible sources of water "contamination." *See id.* This limitation on the Ordinance's scope is supported by its stated purpose and the history

26

behind its enactment. First, the purpose of the ordinance, as evidenced by its title and provisions, is to prevent flood damage in Maverick County. *See id.* Second, Maverick County adopted the Ordinance solely to ensure that its citizens were entitled to receive FEMA flood insurance pursuant to the NFIP.[10] *See id.* art. 1, § A (recognizing that the Texas Legislature delegated rule making authority to local governmental units to "adopt regulations designed to minimize flood losses"). In fact, the Ordinance is a form document promulgated by FEMA for that very purpose. *See* TEXAS WATER DEVELOPMENT BOARD, SAMPLE FEMA ORDINANCES, available at http://www.twdb.texas.gov/flood/insurance/participation.asp (last visited September 15, 2015). We note that FEMA, acting pursuant to the NFIP, does not regulate floodwater quality. *See* 42 U.S.C.A. § 4012. In Texas, the Texas Commission for Environmental Quality (TCEQ) is tasked with regulating and permitting for floodwater quality. *See* 33 U.S.C.A. § 1342(b); TEX. WATER CODE ANN. §§ 26.011, .027 (West, Westlaw through 2015 R.S.).

Judge Saucedo argues that floodwater quality and the potential for contamination are important and relevant under the Ordinance because the purpose of the Ordinance is, in part, to "promote the public health, safety and general welfare." Therefore, he claims that he is authorized to consider potential water contamination because it would be detrimental to the health, safety, and general welfare of the community. However, we

---

[10] *See Remund v. State Farm Fire & Cas. Co.* 483 Fed. Appx. 403, 405 (10th Cir. 2012) ("Established under the National Flood Insurance Act of 1968, the [National Flood Insurance Program] NFIP is designed to make flood insurance available "on a nationwide basis through the cooperative efforts of the Federal Government and the private insurance industry" by "pooling risks, minimizing costs, and distributing burdens equitably among those who will be protected by flood insurance and the general public. FEMA administers the program . . . .") (internal citations omitted).

disagree that this general statement included in the Ordinance's "Statement of Purpose" can be applied so broadly as to allow Judge Saucedo to consider a factor beyond the scope of the Ordinance. As discussed above, floodwater quality is not a consideration contemplated by the Ordinance, and we do not read the Ordinance to grant such expansive power to the Floodplain Administrator: instead we find that the Floodplain Administrator is required to consider the health, safety, and general welfare of the community by fulfilling his specific task of ensuring that Maverick County will be reasonably safe from flood damage. *See* Maverick County, Tex., Flood Damage Prevention Ordinance art. 4, § B(2).

Nor do we read article 4, section C(2)(c) of the Ordinance that requires Judge Saucedo to consider, as one factor, "[t]he danger that *materials* may be swept onto other lands to the injury of others," to include potential water contamination or floodwater quality. *See id.* art. 4, § C(2)(c) (emphasis added). Our review of the language in subsection C(2)(c), read alone or considered as part of the Ordinance as a whole, neither creates additional areas of authority for Judge Saucedo nor expands his review to considerations beyond flood damage prevention. Instead, we determine that the FEMA form Ordinance directed Judge Saucedo to consider potential flooding hazards created when materials are swept downstream in the course of a flood. *See id.*

Moreover, to the extent Judge Saucedo is concerned that floodwater quality is a danger to the health and safety of the community, the Ordinance provides that he is required to ensure that all permitting, including permitting for floodwater quality pursuant to the Federal Water Pollution Control Act, is in place before he grants a permit for development in the floodplain. *See id.* art. 4, § B(4). In Texas, the TCEQ provides the

28

required permitting and has jurisdiction and control over water quality in the State of Texas. *See* 33 U.S.C.A. § 1342(b); TEX. WATER CODE ANN. §§ 26.011, .027. It is undisputed that Dos Republicas applied for and received the necessary permits from the TCEQ, including permits that pertain to discharge storm water and mine seepage and the Texas Pollutant Discharge Elimination System (TPDES) permit.

We determine that the Ordinance does not give Judge Saucedo, as Floodplain Administrator, the authority to base his determination to deny Dos Republicas' permit application on floodwater quality when the TCEQ had already issued the requisite permits regulating the same. In fact, by the terms of the Ordinance, to the extent the authority provided to Judge Saucdeo intersects with the authority of the TCEQ, the Ordinance provides that "in the interpretation and application of this ordinance, all provisions shall be . . . deemed neither to limit nor repeal any other powers granted under state statutes." Maverick County, Tex., Flood Damage Prevention Ordinance art. 3, § F. The TCEQ retains the responsibility for permitting and controlling floodwater quality and potential water contamination, and no provision of the Ordinance can, by the Ordinance's own terms, limit or repeal the authority given to the TCEQ by the Texas Legislature. *See id.; see also* TEX. WATER CODE ANN. §§ 26.011, .027.

We disagree with the trial court's fact finding that floodwater quality was considered as a "mere reference" to factors in the Ordinance because floodwater quality is beyond the scope of the Ordinance's purview and does not refer to one of the enumerated factors.[11] *See City of Keller*, 168 S.W.3d 822. Because Judge Saucedo considered

---

[11] Moreover, Judge Saucedo may be preempted from considering water contamination or floodwater quality in reference to his review of factors (a)–(c) by the Texas Legislature's grant of authority to the TCEQ. *See Southern Crushed Concrete, LLC v. City of Houston,* 398 S.W.3d 676, 679 (Tex. 2013)

29

floodwater quality, an irrelevant factor not contained within the Ordinance, we determine the trial court erred when it concluded that Judge Saucedo did not abuse his discretion in considering floodwater quality. *See Dallas Morning News,* 861 S.W.2d at 536; *see also S. Plains Lamesa R.R., Ltd.*, 52 S.W.3d at 774. We sustain subsection (c) of Dos Republicas' second issue.

## VIII. CONCLUSION

We reverse the order of the trial court denying Dos Republicas' petition for writ of mandamus on the ground that the trial court erred when it found that Judge Saucedo, as Floodplain Administrator of Maverick County, did not abuse his discretion by considering an irrelevant factor in denying Dos Republicas' permit application. We remand to the trial court for further proceedings in accordance with this opinion.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 8th
day of October, 2015.

---

(recognizing that the City of Houston could not pass an ordinance that effectively moots a decision of the TCEQ to approve a permit under the Texas Clean Air Act).